Celia McGuinness (SBN 159420)
*cmcguinness@mcguinness-legal.com*
Deborah Gettleman (SBN 267309)
*dgettleman@mcguinness-legal.com*
McGUINNESS LAW GROUP, PC
155 Grand Avenue, Suite 900
Oakland, CA 94612
Telephone: (510) 439-2950
Facsimile: (510) 439-2951

Attorneys for Plaintiff
Portia Lemmons

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Portia Lemmons<br><br>          Plaintiff,<br><br>     v.<br><br>Avanath Acton, LP; Avanath Capital<br>Management, LLC<br><br>          Defendants. | CASE NO.<br><br><u>Civil Rights</u><br><br>**COMPLAINT FOR INJUNCTIVE RELIEF<br>AND DAMAGES**<br><br>1.  Violation of the Federal Fair Housing Act,<br>42 U.S.C. § 3601 *et seq.*<br><br>2.  Violation of the Fair Employment and<br>Housing Act, Cal. Gov't Code § 12955 *et<br>seq.*<br><br>3.  Violation of the Unruh Civil Rights Act,<br>Cal. Civil Code §51 *et seq.*<br><br>4.  Violation of the Disabled Persons Act, Cal.<br>Civil Code § 54 *et seq.*<br><br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

**INTRODUCTION**

1.      Portia Lemmons is a fiercely independent woman with cerebral palsy and spastic quadriplegia. She relies on a wheelchair for mobility and has very limited use of her limbs but leads an autonomous life. She has a large and competent team of care workers that assist her in living the independent life she has worked so hard to maintain.

2.      Ms. Lemmons moved into the Acton Courtyard Apartments in Berkeley, California, in December 2018. Prior to taking possession of the unit, she requested, as a reasonable accommodation of her disability, to be provided a remote key fob to automatically open the entry door to the apartment complex, and an access code for the exterior intercom so that her care workers and monthly medical equipment delivery could be buzzed in remotely.

3.      Although these reasonable accommodations were initially granted, when the remote fob stopped working in January 2022 and the intercom in June that same year, Acton Courtyard management ignored her numerous requests to replace the fob and fix the intercom.

4.      To this day, more than two years later, in order for Ms. Lemmons to gain entry to her own apartment building, she has to first wait outside until a fellow tenant or a staff member sees her, explain who she is, and request that they open the door for her. This is cumbersome, unreliable, can be embarrassing and above all, denies her equal access to her home. Further, her support staff, upon whom she relies to live, are unable to gain entry without her physically going to open the building door for them or unless they follow behind another tenant who is willing to trust that they are there for their stated purpose.

5.      Plaintiff brings this action to end Defendants' harmful and unlawful disability discrimination.  She seeks an order that Defendant ceases all discriminatory behavior, grant her reasonable accommodation requests, and implement lawful fair housing policies and practices to ensure that neither this Plaintiff nor any other tenant suffers similar discrimination in the future. Plaintiff also seek damages for her injuries and reimbursement of her reasonable attorney fees and costs.

///

1

**JURISDICTION AND VENUE**

2     6.     This Court has jurisdiction over the claims brought under federal law pursuant to

3 28 U.S.C. §§ 1331 for violations of federal law.  This Court has jurisdiction over the pendent state

4 law claims brought under California law pursuant to 28 U.S.C. § 1367.

5     7.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because the real

6 property which is the subject of this action is located in this District and Plaintiff's causes of

7 action arose in this District.

8

**PARTIES**

9     8.     At all times herein relevant, Plaintiff has been a person with a "handicap" within

10 the meaning of 42 U.S.C. § 3602 and a person with a disability within the meaning of 29 U.S.C. §

11 705(9)(B), California Government Code § 12926, California Civil Code § 51 and California Civil

12 Code § 54.1. She has medical conditions that substantially limit major life activities, including

13 walking, holding, standing, and speaking.  She cannot perform these activities in the same manner

14 and duration as a person without a disability.  She uses a wheelchair for mobility.

15     9.     On information and belief based on a review of publicly available records,

16 Defendants AVANATH ACTON, LP. and AVANATH CAPITAL

17 MANAGEMENT, LLC (collectively referred to as "AVANATH") are part of a real estate

18 investment conglomerate that acquires, owns, and operates affordable apartment housing

19 . Since July 2021, AVANATH is

20 and has been the owner and operators of the five-story, 71-unit, low-income residential apartment

21 complex at issue, whose business address is 1370 University Avenue, Berkeley, California and

22 known as "Acton Courtyard" (hereinafter "the Property"), where Plaintiff is a tenant.

23     10.     On information and belief based upon a review of publicly-available records,

24 Defendant AVANATH ACTON, LP owns the real property know as 1370 University Avenue,

25 Berkeley, California.

26     11.     On information and belief based upon a review of publicly-available records,

27 Defendant AVANATH CAPITAL MANAGEMENT, LLC is the management company that

28

1   operates the Property and was acting within the scope of its contract and agency with Defendant

2   AVANATH ACTION, LP, at all times relevant to the Complaint.

3       12.     Plaintiff is informed and believes, and thereon alleges, that Defendants and each of

4   them were, at all times relevant to the action, the owner, operator, general partner, limited partner,

5   agent, employee, representing partner and/or joint venture of the other Defendant and were acting

6   within the course and scope of that relationship.  Plaintiff is further informed and believes, and

7   thereon alleges, that each Defendant herein, including their managing agents and owners, gave

8   consent to, ratified and/or authorized the acts alleged herein to the other Defendant.

9       13.     Defendants are entities that acquire, own, and/or operate affordable apartment

10  communities, including Acton Courtyard. As professional housing builders, developers and

11  managers, Defendants are, or should be, well aware of their responsibilities not to discriminate in

12  the provision of housing services at Acton Courtyard, but by their actions and inactions have

13  rendered the Complex inaccessible for Plaintiff.

14                              **FACTUAL ALLEGATIONS**

15  Plaintiff's Accommodation Requests

16      14.     Plaintiff's disabilities qualify her for in-home support services around the clock.

17  Some members of her care team rotate in and out. Plaintiff does not know them well enough to

18  provide them keys to her apartment building and unit.

19      15.     Plaintiff moved into the Property in December 2018 and remains a tenant to this

20  day.

21      16.     Upon moving into the Property, Plaintiff requested, as a reasonable

22  accommodation of her disability:

23          a.   Three sets of keys for her and two of her support staff;

24          b.   A remote fob to automatically open the building's exterior door;

25          c.   An access code for the exterior intercom to remotely allow in deliveries and

26               provide access for her other rotating care workers who do not have a key for

27               safety reasons;

28      17.     All of these reasonable accommodations were granted.

Avanath Acquires Acton Courtyard

18.     Defendants took over ownership of the Property in July 2021.

19.     In January 2022, Plaintiff's remote to open the exterior door to the apartment complex stopped working.

20.     Plaintiff immediately verbally notified the management and requested a replacement, advising them that without it she is unable to get inside of the building.

21.     The manager verbally agreed to replace it, but never did.

22.     Without a key fob, Plaintiff can only enter the building if a security guard is there to open the front door for her or if she follows in another tenant. Security guards are on the premises 24 hours on the weekends but only 4-6pm weekdays. Having to wait for assistance, and to constantly explain why she is entitled to entry at her own apartment complex, denies Plaintiff the independence to which she is legally entitled.  It also is frustrating, embarrassing, and calls unwanted attention to her disability.

23.     Often tenants will ask her why she doesn't use her own key if she's a tenant. She is forced to explain that though she has a key, she cannot physically use it.

24.     In June 2022, the intercom stopped working. Plaintiff submitted a written reasonable accommodation for it to be repaired because she has a number of health care staff that rely on the intercom to get into the building. She inquired when it would be repaired. She never received a response.

25.     Several times, the security team denied entry to Plaintiff's staff because they were not tenants and were determined to be unauthorized guests. As a result, in late June 2022, Plaintiff submitted a list of all of her staff and their schedules to management. She asked that management share this with the security team so that her care team could be allowed in the building to provide her care. Management refused to do this because "it violates HIPAA."

26.     Six months later, in January 2023, Plaintiff sent a follow up email regarding the broken intercom to the onsite manager.  She included an updated list of staff, reiterating that a number of them rely on the intercom to gain entry to the apartment complex and her unit. Management ignored this email as well.

27.     Four months later in May 2023, Plaintiff sent an email to the onsite manager again following up on the intercom, stating that she needs a way to remotely let her staff into the building along with her monthly deliveries of medical equipment.

28.     Again, she received no reply.

29.     In June 2023, Plaintiff escalated the issue to Wendy Ruiz, Acton Coutyard's Community Manager, letting her know that she had yet to receive a response to the accommodation request she submitted in June 2022.

30.     Plaintiff received no reply.

31.     In March 2024, two years after Plaintiff first notified Defendants that the key fob to enter the exterior door of the building had stopped working, she sent another written reasonable accommodation request to management stating that she needs a replacement fob. She notified management that the security team is rarely present outside of the front door of the complex anymore and "residents don't always want to hold the door for me." She explained again that she needs the key fob "because I can't physically put the key in the door and turn it to open the door."

32.     Plaintiff did not receive a reply so a week later, she escalated the request to the regional manager Joy Damian. Ms. Damian replied via email immediately to say she had received Plaintiff's request for a replacement exterior key fob but said nothing further and never followed up with a substantive reply as to when Plaintiff would be receiving it.

33.     A week later, Plaintiff again emailed Ms. Damian asking if Defendants have any additional information or updates on this accommodation request, given that she has submitted several previous requests. Ms. Damian did not respond.

34.     On March 30, 2024, Plaintiff submitted the request for a replacement exterior door key fob on a reasonable accommodation form and submitted it to Marn'i Washington and Joy Damien, the regional managers, again asking for a replacement fob.

35.     On April 17, 2024, Plaintiff received an email from Ms. Washington, one of the regional managers, apologizing for the delay and directing Plaintiff to follow up with the onsite manager. Plaintiff did just that and was informed that "they are working on it."

36.     As of the filing of this lawsuit, Plaintiff still has not received a replacement key

fob to enter her apartment building and does not have a working intercom to let in her support staff.

37.     Plaintiff regularly has to wait long periods, sometimes hours, until she is let in to the front door of her own building because Defendants refuse to provide her with a fob.

38.     On multiple occasions, security has refused entry to Plaintiff's staff requiring Plaintiff to wheel downstairs to open the door for them.

39.     Defendants' behavior is ongoing. They continue to deny Plaintiff equal access to her housing by their refusal to grant very basic reasonable accommodation requests that Plaintiff has been lodging since 2022: For access to her own apartment building, for her and her care workers.

## INJURIES

40.     As a result of Defendants' discriminatory conduct, Plaintiff has suffered emotional distress, including frustration, embarrassment, mental anguish, violation of her civil rights and loss of dignity. Accordingly, Plaintiff is entitled to recover compensatory damages pursuant to the federal Fair Housing Act, California's Fair Employment and Housing Act and related laws.

41.     In doing the acts of which Plaintiff complains, Defendants acted intentionally and with oppression, malice, and conscious or reckless disregard of Plaintiff's fair housing rights. Accordingly, Plaintiff is entitled to recover punitive and treble damages.

42.     Unless enjoined, Defendants will continue to engage in the unlawful acts and in the pattern or practice of discrimination described above. Plaintiff has no adequate remedy at law. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' acts and its pattern or practice of discrimination unless relief is provided by the Court. Accordingly, Plaintiff is entitled to injunctive relief.

## FIRST CAUSE OF ACTION:
## VIOLATION OF THE FAIR HOUSING ACT
### [42 U.S.C. § 3601 et seq.]

43.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

44. Acton Courtyard is a "covered multifamily dwelling" having four or more units with one or more elevators.

45. As a provider of multifamily housing, Defendants and each of them are required to grant requests for changes in rules, policies, practices, or services when it may be necessary to afford a handicapped person equal opportunity to use and enjoy the dwelling.

46. Plaintiff Portia Lemmons is a person with a "handicap" as defined by the Fair Housing Act ("FHA").

47. Defendants have violated the protections afforded to Ms. Lemmons under the FHA by discriminating against her on the basis of disability in refusing to grant Ms. Lemmons' requests for reasonable accommodations for:

   a. A replacement key fob to open the exterior doors of the building.

   b. The intercom to be repaired, so Plaintiff can let in her care workers and medical supply deliveries.

48. Ms. Lemmons was harmed and continues to be harmed by the denial of these reasonable accommodation requests in that she, herself is at risk when she cannot enter her own apartment building and must wait, sometimes hours, until she can get a tenant or staff member to open the door for her. In addition, her caregiving plan is put at risk because she is unable to provide remote entry to the building for her care workers and they must therefore rely on other tenants or staff letting them in, which is unpredictable.  This causes Ms. Lemmons stress and interferes with her efforts to live an independent life and have full and equal use of her home.

WHEREFORE, Plaintiff requests relief as outlined below.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**
**[Cal. Gov't Code § 12955 *et seq.*]**

49. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in the preceding paragraphs.

50. Acton Courtyard is a multifamily complex consisting of at least three rental apartment dwelling units and one elevator and is thus a "covered multifamily dwelling unit" as

1    defined in Cal. Gov't Code § 12955.1.1.

2          51.    Acton Apartments is a housing accommodation within the definition of Cal. Gov't

3    Code § 12927 in that it is a building, structure, or portion thereof that is occupied as, or intended

4    for occupancy as, a residence by one or more families.

5          52.    Plaintiff Portia Lemmons is a person with a disability as defined by the Fair

6    Employment and Housing Act ("FEHA").

7          53.    Defendants have violated the protections afforded to Ms. Lemmons under FEHA

8    by discriminating against her on the basis of disability in refusing to grant Ms. Lemmons'

9    requests for reasonable accommodations for:

10               a.   A replacement key fob to open the exterior doors of the building.

11               b.   The intercom to be repaired, so Plaintiff can let in her care workers and

12                    medical supply deliveries.

13         54.    Ms. Lemmons' requests are necessary to afford her an equal opportunity to use

14   and enjoy her dwelling.

15         55.    Ms. Lemmons was harmed and continues to be harmed by the denial of these

16   reasonable accommodation requests in that she, herself is at risk when she cannot enter her own

17   apartment building and must wait, sometimes hours, until she can get a tenant or staff member to

18   open the door for her. In addition, her caregiving plan is put at risk because she is unable to

19   provide remote entry to the building for her care workers and they must therefore rely on other

20   tenants or staff letting them in, which is unpredictable.  This causes Ms. Lemmons stress and

21   interferes with her efforts to live an independent life and have full and equal use of her home.

22   WHEREFORE, Plaintiff requests relief as outlined below.

23

24                              **THIRD CAUSE OF ACTION**
         **VIOLATION OF CALIFORNIA UNRUH CIVIL RIGHTS ACT**
                          **[Cal. Civil Code § 51 et seq.]**

25

26         56.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein,

27   the factual allegations contained in the preceding paragraphs.

28

57.     Defendants, and each of them, are a business establishment within the meaning of the Unruh Act in that they own and operate a housing accommodation that provides goods, services and facilities in exchange for money.

58.     Plaintiff Portia Lemmons is a person with a disability within the meaning of the Unruh Act.

59.     Defendants have violated the protections afforded to Ms. Williams under Unruh by denying her full and equal accommodations, advantages, facilities, privileges, or services in her rental accommodations by refusing to grant Ms. Lemmons' requests for reasonable accommodations for:

        a.   A replacement key fob to open the exterior doors of the building.

        b.   The intercom to be repaired, so Plaintiff can let in her care workers and medical supply deliveries.

60.     Ms. Lemmons' requests are necessary to afford her an equal opportunity to use and enjoy the facilities, privileges and services of the rental accommodation.

61.     The denial of full and equal enjoyment of Plaintiff's home complained of herein because of Defendants' refusal to grant very basic reasonable accommodation requests are patent barriers to Plaintiff and are of an obvious and intuitive nature such that failing to grant the requests demonstrates intentional discrimination. Defendants are familiar with the requirements of fair housing laws. Defendants intentionally refused to grant the reasonable accommodations in the face of Plaintiff's direct, timely and written requests to provide access to her and her care staff. Plaintiff's damages resulted from Defendants' intentional acts and omissions.

62.     Ms. Lemmons was harmed and continues to be harmed by the denial of these reasonable accommodation requests in that she, herself is at risk when she cannot enter her own apartment building and must wait, sometimes hours, until she can get a tenant or staff member to open the door for her. In addition, her caregiving plan is put at risk because she is unable to provide remote entry to the building for her care workers and they must therefore rely on other tenants or staff letting them in, which is unpredictable. This causes Ms. Lemmons stress and interferes with her efforts to live an independent life and have full and equal use of her home.

1    WHEREFORE, Plaintiff requests relief as outlined below.

2

3                              **FOURTH CAUSE OF ACTION**
     **VIOLATION OF CALIFORNIA DISABLED PERSONS ACT**
4                              **[Cal. Civil Code § 54 et seq.]**

5    63.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein,

6    the factual allegations contained in the preceding paragraphs.

7    64.    Acton Courtyards is a housing accommodation within the meaning of the Disabled

8    Persons Act (DPA).

9    65.    Plaintiff is a person with a disability within the meaning of the DPA.

10   66.    The DPA states in relevant part, "Individuals with disabilities shall be entitled to

11   full and equal access, as other members of the general public, to all housing accommodations

12   offered for rent, lease, or compensation in this state, subject to the conditions and limitations

13   established by law, or state or federal regulation, and applicable alike to all persons." Cal. Civ.

14   Code § 54.1(b)(1).

15   67.    Defendants have violated the protections afforded to Ms. Lemmons under the DPA

16   by denying her full and equal access to her housing accommodations by refusing to grant Ms.

17   Lemmons' requests for reasonable accommodations for:

18          a.   A replacement key fob to open the exterior doors of the building.

19          b.   The intercom to be repaired, so Plaintiff can let in her care workers and

20               medical supply deliveries.

21   68.    Ms. Lemmons was harmed and continues to be harmed by the denial of these

22   reasonable accommodation requests in that she, herself is at risk when she cannot enter her own

23   apartment building and must wait, sometimes hours, until she can get a tenant or staff member to

24   open the door for her. In addition, her caregiving plan is put at risk because she is unable to

25   provide remote entry to the building for her care workers and they must therefore rely on other

26   tenants or staff letting them in, which is unpredictable. This causes Ms. Lemmons stress and

27   interferes with her efforts to live an independent life and have full and equal use of her home.

28   WHEREFORE, Plaintiff requests relief as outlined below.

**RELIEF**

WHEREFORE, Plaintiff prays for judgment and the following specific relief against Defendants:

1.     Under the First through Third Causes of Action, for an order enjoining Defendants, their agents, officials, employees, and all persons acting in concert with them:

      a.     From continuing the unlawful acts, conditions, and practices described in this Complaint;

      b.     To grant Ms. Lemmons' reasonable accommodation requests and:

            a.   Issue her a replacement key fob to open the exterior doors of the building;

            b.   Repair the exterior intercom so that Plaintiff can safely provide remote entry to her care workers and medical supply deliveries.

      c.     To train Defendants' employees and agents on how to accommodate the rights and needs of persons with disabilities;

      e.     To implement nondiscriminatory protocols, policies, and practices for accommodating persons with disabilities.

2.     Plaintiff does not seek injunctive relief under Cal. Civ. Code § 55.

3.     That the Court retain jurisdiction over Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, as complained of herein no longer occur, and cannot recur;

4.     Award to Plaintiff all appropriate damages, including but not limited to statutory damages, general damages, treble damages and punitive damages, all according to proof;

5.     Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by federal and state law;

6.     Grant such other and further relief as this Court may deem just and proper.

///

///

Dated:  June 27, 2024                    McGuinness Law Group, PC


                                         ___/s/ Deborah Gettleman_____
                                         By Deborah Gettleman
                                         Attorneys for Plaintiff




## DEMAND FOR JURY

Plaintiff hereby demands a jury for all claims for which a jury is permitted.


Dated:  June 27, 2024                    McGuinness Law Group, PC


                                         ___/s/ Deborah Gettleman_____
                                         By Deborah Gettleman
                                         Attorneys for Plaintiff